826 F.2d 788
 Terrence P. O'DONNELL, Jr., Appellant,
v.
Sheriff Pat THOMAS; Capt. Dan Williamson; Deputy Mark
Griffey; Deputy McNulty; Deputy Mott; Deputy
Jiff; Deputy Arthur Dudley; Deputy
Friis; and Deputy Squire, Appellees.
 No. 86-1534.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 9, 1986.
Resubmitted July 16, 1987.
Decided Aug. 24, 1987.
 
 James J. DeMars, Lincoln, Neb., for appellant.
 Michael A. Fortune, Omaha, Neb., for appellees.
 Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and CONMY,* District Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 Terrence P. O'Donnell, Jr., appeals from a final order of the District Court[1] for the District of Nebraska dismissing this action brought under 42 U.S.C. Sec. 1983. O'Donnell alleged numerous constitutional violations arising out of conditions during his pretrial incarceration at the Sarpy County Jail (the jail) in Bellevue, Nebraska. Defendants named in the action include the Sarpy County Sheriff, the jail supervisor and the deputy sheriffs who served as guards at the jail (collectively the jail officials). The case was tried without a jury and, at the close of O'Donnell's case-in-chief, the district court granted defendants' motion for involuntary dismissal pursuant to Fed.R.Civ.P. 41(b). For reasons stated from the bench, the district court found that O'Donnell had established no right to relief under Sec. 1983. O'Donnell filed a timely appeal, alleging, among other things, that the district court's factual findings were clearly erroneous.
 
 
 2
 We twice remanded the case to the district court for further findings and conclusions of law. O'Donnell v. Thomas, 814 F.2d 524 (8th Cir.1987) (order); (May 6, 1987) (order). We retained jurisdiction over the appeal pending receipt of the district court's certifications. The district court responded to our March 20 order of remand, certifying further findings and conclusions of law to this court on two issues. O'Donnell v. Thomas, No. CV84-L-803 (D.Neb. Apr. 7, 1987). The district court determined that the evidence presented at the trial was insufficient to adequately respond to our May 6 order of remand for further findings on the reasonableness of the restraints placed on O'Donnell and held an evidentiary hearing on June 25, 1987.[2] On the following day, the district court certified further findings to this court on the issue of restraints. Id., slip op. at 1 (June 26, 1987). With these findings and conclusions before us, we now proceed to consider O'Donnell's appeal.
 
 
 3
 The facts in this case are set out in detail in this court's initial order remanding this case to the district court. March 20 order at 1-4. O'Donnell was incarcerated at the jail from March 23, 1984, to December 21, 1984, awaiting trial on a burglary charge. During this period, he repeatedly complained to jail officials that he could not sleep. Because O'Donnell appeared extremely agitated, a psychiatrist examined him and prescribed medication. Following a second examination a few days later, the psychiatrist determined that O'Donnell's condition was deteriorating and significantly increased his medication.[3]
 
 
 4
 O'Donnell continued to complain that he had serious stomach pains and could not sleep. Sleeping pills were prescribed for the sleeping problem. About six weeks after entering the jail, O'Donnell was admitted to the hospital for tests and diagnosed as having an ulcer. He was given medication and told to eat a bland diet. O'Donnell claims that upon returning to the jail he was often served spicy foods that aggravated his ulcer and that jail officials would not procure a medical device he used to relieve pain in his disabled hand.
 
 
 5
 On May 17, 1984, O'Donnell attempted suicide by swallowing a hoarded cache of 28-29 sleeping pills and was hospitalized. On May 18, Dr. Ivan Abdouch made an entry on O'Donnell's hospital chart ordering "suicide precautions.... Restraints as necessary." On May 20, Dr. Yeager, a psychiatrist attending O'Donnell at the hospital, told Corporal Arthur Dudley of the sheriff's office that O'Donnell was suicidal and homicidal and should be cared for at a secure medical unit, not a hospital.
 
 
 6
 During the approximately five days O'Donnell was hospitalized, he was bound to the hospital bed with leather restraints on each wrist and ankle, except for the last day of his hospital stay and on a few occasions when he was released to go to the bathroom. For a six-hour period on May 18, the second day of hospitalization, Deputy Sheriff Katherine Friis added a second set of restraints, metal handcuffs, to O'Donnell's ankles and wrists, because, according to Friis, O'Donnell was belligerent, verbally abusive and fighting the leather restraints and because she feared O'Donnell would escape and harm himself or others. On about the third day of his hospitalization, O'Donnell's right arm was removed from the restraint and left free thereafter. Nurses monitored O'Donnell for physical discomfort hourly while he was restrained.
 
 
 7
 Following his hospitalization, O'Donnell was returned to the jail. He testified that female jail officials supervised him on at least two occasions while he used the showers and also monitored the in-cell cameras. Prisoner toilet facilities are located within the cells.
 
 
 8
 A large manila envelope containing three letters that O'Donnell had written and addressed to a United States Magistrate and had left behind at the hospital was returned through the mail to him at the jail. It is undisputed that jail officials opened the manila envelope. O'Donnell also claims the three letters inside the manila envelope were opened, even though these letters were privileged legal communications.
 
 
 9
 O'Donnell was transferred to another institution in December 1984. In the same month, he brought this Sec. 1983 action alleging that his constitutional rights had been violated while he was confined at the jail. O'Donnell testified at trial to the cumulative deleterious effect of the jail conditions on his troubled emotional and mental condition. The jail supervisor testified, and the depositions of three psychiatrists who had examined O'Donnell while he was incarcerated were also admitted into evidence. At the evidentiary hearing, O'Donnell and the jail officials testified about the restraints under which he was kept while hospitalized.
 
 
 10
 Following the evidentiary hearing, the district court held that O'Donnell failed to establish a constitutional violation. The district court specifically concluded that (1) the jail officials' opening of the manila envelope and the three letters in the course of normal security screening of inmate mail did not violate O'Donnell's due process right of access to the courts because the envelopes were not clearly identified as privileged legal communications; (2) the continuous lighting in the holding cell was not unreasonable given the need for jail security and the need to monitor O'Donnell; (3) the restraints did not constitute cruel and unusual punishment because they were used on the advice of a physician and were not more severe than necessary to prevent O'Donnell from harming himself or others; (4) prison officials were not deliberately indifferent to O'Donnell's need for medical treatment for his ulcer or for pain relief for his disabled hand; and (5) alleged verbal threats and abuse by jail officials at the hospital did not rise to the level of a constitutional violation. The district court also held that O'Donnell failed to state a claim based on the failure of the jail officials to monitor his taking of sleeping pill medication and the supervision of the shower area and in-cell camera by female jail officials.
 
 
 11
 We have carefully reviewed the record in this case and we find no error of fact or law in the district court's rulings from the bench and certified findings of fact and conclusions of law. Accordingly, the judgment of the district court is affirmed. See 8th Cir.R. 14.
 
 
 
 *
 The Honorable Patrick A. Conmy, Chief Judge, United States District Court for the District of North Dakota, sitting by designation
 
 
 [1]
 The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska
 
 
 [2]
 Appellant's motion to supplement the record on appeal with the transcript of the evidentiary hearing is granted. We have reviewed the transcript of both the trial and the evidentiary hearing
 
 
 [3]
 O'Donnell was later evaluated for psychological competency and was found competent to stand trial